# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| TALIA N. HARRISON, | : |
| | : |
| Plaintiff, | : |
| | : |
| | : No. 4:21-cv-00607-ALM |
| vs. | : |
| | : |
| TYLER TECHNOLOGIES, INC., | : |
| | : |
| | : |
| Defendant. | : |

## DEFENDANT TYLER TECHNOLOGIES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff's Response to the summary judgment motion of Defendant Tyler Technologies, Inc. ("Tyler") attempts to create a new evidentiary record—one dependent on her largely inadmissible declaration—and relies on distinguishable case law. Plaintiff cannot, however, overcome the summary judgment evidence that establishes that her Senior Project Manager and Implementation Analyst roles are exempt. Plaintiff also fails to meet her burden to establish evidence of willfulness by Tyler.

I. **PLAINTIFF HAS NO COMPETENT SUMMARY JUDGMENT EVIDENCE TO SUPPORT HER ARGUMENTS**

As set forth in more detail in Tyler's motion to strike filed with this reply, Plaintiff fails to cite admissible evidence in her response to Tyler's motion for summary judgment. She does not cite to her deposition a single time and instead relies exclusively on her inadmissible declaration.[1] Plaintiff's declaration, however, is inadmissible for a variety of evidentiary reasons, including its conclusory nature and because it directly contradicts her deposition testimony.[2] *See Kariuki v. Tarango*, 790 F.3d 495, 505 (5th Cir. 2013) (holding that to create a genuine issue of material fact a declaration must set out particularized facts, not vague or conclusory statements, and self-serving allegations are not probative evidence sufficient to defeat summary judgment). Without Plaintiff's inadmissible declaration, Plaintiff has no evidence to support the arguments in her Response.[3]

---

[1] Plaintiff did not conduct any depositions.

[2] Plaintiff's failure to cite any evidence other than her inadmissible declaration is particularly remarkable in light of her request that that the Court grant her additional time (ultimately, nearly seven months) to file her Response to conduct additional discovery. Despite arguing that she needed additional discovery to prepare her response, Plaintiff does not cite to any of the purportedly necessary additional discovery in her Response.

[3] Plaintiff also fails to cite to the record for support of several arguments in her response. *See, e.g.,* Pl. Resp. at pp. 20-21 ("In fact, it is directly contradicted by Ms. Harrison who has testified that she had no discretion, that her trainings were based on templates by Tyler, and that the important decisions about the scope and timing of customer implementations were made at the sales level before she ever became involved."); p. 22 ("As Ms. Harrison's testimony establishes, she performed *none* of these duties with the singular exceptions of (1) occasionally participating in group interviews along with many other ExecuTime team members, and (2) apportioning work to a single other employee (not 'employees' as the regulation requires)."); p. 22 ("But Ms. Harrison's testimony is unequivocal: she worked with a single IC at a time. Her interactions with other team members were informal and there is not the slightest indication that she directed their work within the meaning of the regulation."). Plaintiff's failure to cite evidence in support of

**Defendant's Reply In Support of Summary Judgment – Page 1**

## II.     PLAINTIFF RELIES ON DISTINGUISHABLE AND NON-BINDING AUTHORITY

Plaintiff argues that her primary job duties as a Senior Project Manager and an Implementation Analyst are the same primary job duties as an Implementation Consultant—the role at issue in the *Greene* case that Plaintiff highlights in her Response. Plaintiff's argument overlooks the fact that, as both Plaintiff and the *Greene* court acknowledge, Plaintiff directly supervised Implementation Consultants. Moreover, Plaintiff's position contradicts her sworn deposition testimony and it is entirely unsupported by competent summary judgment evidence.

### A.     *Greene* Involved an Entirely Different Job Than Plaintiff's Positions

Plaintiff spends much of her briefing arguing that the *Greene* ruling requires a finding that Plaintiff's job duties as a Senior Project Manager and as an Implementation Analyst are non-exempt.[4] To accept Plaintiff's argument, the Court would have to find that the Implementation Consultant role that Ms. Greene held (a role that Plaintiff supervised) had the same job duties as Plaintiff's Senior Project Manager and Implementation Analyst roles. Such a finding cannot be squared with the summary judgment evidence in this case.

The Plaintiff in *Greene* was exclusively an Implementation Consultant, and the court in that case discussed the interplay between the Implementation Consultant and Project Manager roles:

- "The project manager is the supervisor of the implementation consultant."

---

her arguments warrants the arguments being disregarded by the Court in its analysis. *Starco Impex, Inc. v. Landmark Am. Ins. Co*., No. 1:19-CV-39, 2020 U.S. Dist. LEXIS 110443, at *7 (E.D. Tex. 2020) ("Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment") (citation omitted); E.D. Tex. LR 56(b), (d) (requiring summary judgment response to be supported by appropriate citations to proper summary judgment evidence).

[4] In fact, ***all*** of the prior FLSA litigation filed against Tyler involved the Implementation Consultant role, not the Project Manager or Implementation Analyst roles. Notably, the two of the three recent FLSA cases against Tyler cited by Plaintiff in her Response were filed by Plaintiff's counsel himself, and he was aware of the third before it was even filed. As to that third case – the *Kudatsky* litigation in California – that case was not brought "on behalf of ExecuTime workers," as the Response contends. *See* Response at p.2. The named plaintiff was a former Implementation Consultant for an entirely different product group.

**Defendant's Reply In Support of Summary Judgment – Page 2**

- "[T]he project manager drafts a 'project plan' for the implementation, which includes project objectives, as well as a checklist and deadlines for user training and integration."

- "[T]he project manager also works with the customer to complete a questionnaire and a solution design."

- "After the project manager has completed these initial aspects of the implementation process, there is a 'handoff' to the implementation consultant."

- "After the 'handoff,' the project manager supervises the implementation consultant in her duties."

- "[I]f the problem was technical, Ms. Greene would escalate the problem to her project manager . . ."

- "[I]f the client was getting low on their pre-allotted hours, [Ms. Greene] would merely indicate that to the project manager."

*Greene v. Tyler Technologies, Inc.*, No. 1:19-cv-01338-AT, Order at pp. 4, 5, 11, 42 (N.D. Ga. Mar. 16, 2021). As the *Greene* order demonstrates, the Implementation Consultant and the Project Manager did not perform the same job duties (and is one reason why it was not relevant to Tyler's summary judgment briefing in this case, *see* Pl. Resp. at p.2 n.1).

In an attempt to expand the scope of the *Greene* ruling to her Senior Project Manager role, and in contradiction with her sworn deposition testimony, Plaintiff relies on her inadmissible declaration to argue that, despite being Ms. Greene's supervisor, she did not perform the Project Manager duties discussed in *Greene*. *See* Pl. Resp. at p. 14.[5] Specifically, Plaintiff argues that her primary duties as a Senior Project Manager and as an Implementation Analyst only involved conducting training on the ExecuTime software. Pl. Resp. at pp. 16-17 ("Plaintiff Harrison had a

---

[5] Notably, Plaintiff was not just a Project Manager, she was a Senior Project Manager, which is a promotion with additional compensation and additional responsibilities, including handling more implementations, working with multiple Implementation Consultants, training Implementation Consultants, and solving high-level issues during an implementation that could not be resolved by a Project Manager. *See* Burns Decl. at ¶ 21, ECF No. 14-2.

**Defendant's Reply In Support of Summary Judgment – Page 3**

few marginal duties that differed from those of IC's [sic], but the overwhelming majority of her work as both a SPM and IA was training customers and other Tyler employees . . .").

Plaintiff's argument is not supported by competent summary judgment evidence and cannot create a genuine issue of material fact. Instead, Plaintiff's deposition testimony establishes that her primary duties as a Senior Project Manager were entirely consistent with the Project Manager duties described in *Greene*:

- During their standing weekly meetings, Plaintiff provided Ms. Greene with answers to Ms. Greene's questions, advice, and feedback based on her observations of Ms. Greene and discussions with management. Pl. Dep. 147:14-152:3, Ex. 12.

- Plaintiff relayed client concerns regarding Ms. Greene's performance to her manager. Pl. Dep. 152:11-17, Ex. 13.

- Plaintiff provided feedback to her manager to be used in an Implementation Consultant's performance evaluation, including that Plaintiff had to stay on top of the Implementation Consultant to complete his tasks and that clients had come to Plaintiff with concerns regarding the Implementation Consultant's performance. Pl. Dep. 155:5-157:12, Exs. 14-15.

- As a Senior Project Manager, Plaintiff created project plans (a/k/a timelines) and would modify the project plans to reflect the resources available to her, including based on the level of competence of the Implementation Consultant assigned to the implementation, and based on Plaintiff's calls with the client to discuss the client's specific needs. Pl. Dep. 32:17-33:6, 112:11-113:23, 115:11-116:8, Ex. 6.

- Once the implementation timeline and solution design were finalized, the Project Manager would have a call with the client to introduce the Implementation Consultant, and after that call the Project Manager would be responsible for managing the project, including issue resolution and escalations. Pl. Dep. 20:5-23:17.

- Plaintiff would create the solution design based on a questionnaire completed by the client and Plaintiff's calls with the client to discuss get more in-depth answers to questions and to validate information from the questionnaire. Pl. Dep. 28:1-30:16.

- Plaintiff would tell Implementation Consultants what part of the implementation project they would be taking on, which would vary depending on the items and hours purchased by the client. Pl. Dep. 69:10-70:7.

- Plaintiff was responsible for ensuring an implementation stayed within budget and would accomplish that by frequently checking in with an Implementation Consultant

**Defendant's Reply In Support of Summary Judgment – Page 4**

about the hours they were spending and updating the project plan with the hours billed, which Plaintiff would pull from tickets submitted for the implementation. If an implementation was close to exhausting the purchased services hours, Plaintiff would escalate the issue to management. Plaintiff would also review billable hour entries to determine if the hours billed were appropriate or if non-billable time should be used. Pl. Dep. 108:7-112:2, 123:24-125:16.

The *Greene* ruling does not address the Implementation Analyst role, which, as Plaintiff acknowledged, was an entirely new role created in October 2019 and at the time performed only by Plaintiff for ExecuTime. Pl. Dep. 194:7-12. As discussed below, the competent summary judgment evidence establishes that Plaintiff's primary duties as an Implementation Analyst involved her "caseload"—i.e., responding to CRM tickets and other requests for assistance on an ExecuTime implementation from Project Managers and Implementation Consultants. Pl. Dep. 215:3-15. These are not the same primary duties as an Implementation Consultant who, among other differences, was not assigned CRM tickets and was not tasked by other Implementation Consultants or Project Managers with resolving sophisticated implementation issues.

In summary, the *Greene* decision is irrelevant to the determination of Tyler's motion. The position—Implementation Consultant—at issue in that case was not the positon Plaintiff performed at Tyler and did not involve the same primary duties as the positions Plaintiff performed.

**B.     THE SENIOR PROJECT MANAGER AND IMPLEMENTATION ANALYST ROLES ARE EXEMPT**

Plaintiff does not substantively discuss a single ruling from a court within the Fifth Circuit in her Response. Instead, Plaintiff cites the *Greene* case and cases from the Eleventh Circuit that did not involve job duties similar to Plaintiff's positions. *See, e.g.*, Pl. Resp. at p. 16 (citing *Swans v. OSP Prevention Grp., Inc.*, 38 F.4th 103, 114 (11th Cir. 2022), which involved property damage investigators). The applicable case law supports a finding that Plaintiff's Senior Project Manager and Implementation Analyst roles are exempt.

**Defendant's Reply In Support of Summary Judgment – Page 5**

1. <u>The Senior Project Manager Role Satisfies the Administrative and Executive Exemptions</u>

    a. *<u>The Senior Project Manager Role Satisfies the Administrative Exemption</u>*

In *Carbaugh v. Unisoft International, Inc.*, No. H-10-0670, 2011 U.S. Dist. LEXIS 131551, at *65 (S.D. Tex. Nov. 15, 2011), Judge Sim Lake granted summary judgment for the employer, finding the plaintiff qualified for the administrative exemption under the FLSA where the plaintiff's primary duties involved:

> demonstrating [the employer's] product to potential clients to assess their needs and capabilities, installing and tailoring [the employer's] software to suit the client's needs, troubleshooting problems, training the clients, working with [the employer's] programmers and coders to provide them with information they needed to produce software that suited the clients' needs, and then verifying that the software performed as needed.

The court also emphasized the plaintiff's role as "the intermediary between the employees of the customers who needed to master his employer's complex software and the software developers, he had to identify the customer's needs, translate them into specifications to be implemented, and assist in the implementation." *Id*. at *67.

The competent summary judgment evidence establishes that Plaintiff's job duties as a Senior Project Manager mirror the duties of the plaintiff in *Carbaugh*. Specifically, Plaintiff testified:

- Plaintiff explained the ExecuTime software capabilities to clients to determine how it could be configured to match the client's payroll practices. Pl. Dep. 28:2-30:16, 48:21-50:1, 54:3-55:18.

- Plaintiff would help configure the ExecuTime software so it aligned with the clients' payroll practices.  Pl. Dep. 46:9-50:21.

- Plaintiff was responsible for escalating issues that arose during an implementation, which included assigning the correct resource to resolve the issue and ensuring the issue was resolved to the client's satisfaction. Pl. Dep. 23:9-17, 58:1-59:9, 72:4-17.

**Defendant's Reply In Support of Summary Judgment – Page 6**

- Plaintiff trained clients on the ExecuTime software, including tailoring the training to the client's particular ExecuTime configuration. Pl. Dep. 46:4-49:15.

- Plaintiff served as the primary point of contact for the client during an implementation, conducting weekly check-in calls or on-demand calls, as needed, and alerting management to any client issues that arose during an implementation. Pl. Dep. 42:9-43:3, 52:8-18, 72:4-17.

Based on Plaintiff's deposition testimony, Plaintiff's primary duties, like the *Carbaugh* plaintiff's primary duties, were administrative work that involved the exercise of discretion and independent judgment on matters of significance.[6]

The *Carbaugh* court also noted that the plaintiff's resume emphasized the exempt nature of his job duties. *Id*. at *65-*66. The same is true here. *See* Pl. Dep., Ex. 2. When questioned during her deposition, Plaintiff did not attempt to distance herself from the statements in her resume about her job duties, but rather testified extensively regarding the administrative nature of her work and the discretion and independent judgment she exercised. *See* Pl. Dep. 56:3-90:17 (describing her Senior Project Manager duties that involved "manag[ing], monitor[ing] and motivat[ing] the cross function team assigned to each project"; "creat[ing] and deliver[ing] customized ExecuTime client training sessions via the web and/or on-site visits to ensure client satisfaction and product knowledge"; "conduct[ing] trainings for Subject Matter Experts and demonstrate[ing] new project functionality for clients as well as internal staff (new and existing)"; "continuously consult[ing] with Stakeholders regarding their specific company operations in order to recommend best utilization and customization of ExecuTime configuration"; being "responsible for completion of projects on time, on budget, on specification" and "perform[ing] a variety of tasks including, but not limited to, scheduling all resources; setting deadlines; assigning

---

[6] Plaintiff testifies she spent 50% of her time on these implementation-related duties. Pl. Dep. 179:22-181:11, 181:15-21

**Defendant's Reply In Support of Summary Judgment – Page 7**

responsibilities; and monitoring, summarizing and communicating the progress of the project"; "efficiently and competently manag[ing] problems, changed requirements, missed deadlines, etc."; "schedul[ing] resources for each project and ensur[ing] resources are sufficient"; "assist[ing] with onboarding process for new hires through recruiting, interviewing, and hiring"; "analyz[ing], provid[ing] recommendations, document[ing] and test[ing] system feature enhancement with Tyler-ExecuTime Director of Product Strategy & Operations"; "identif[ying] and escalat[ing] incidents to development and/or management when needed"; "analyz[ing], recommend[ing] and document[ing] system development priorities for new ExecuTime features and change requests submitted by customers"; "responsible for identifying and analyzing user requirements, procedures, and problems to improve workflow"; "travel[ing] to prospective clients to perform analysis on internal practices and filter questions or concerns directly related to ExecuTime software"). As such, the Court should reject Plaintiff's conclusory assertions that try to distance herself from the statements in her resume and that contradict her deposition testimony as to its accuracy in describing the job duties she performed at Tyler.

          b.    *<u>The Senior Project Manager Role Satisfies the Executive Exemption</u>*

In addition to the administrative exemption, Plaintiff's primary job duties as a Senior Project Manager also satisfy the executive exemption. As discussed in Tyler's motion for summary judgment, Plaintiff testified she spent roughly 50% of her time as a Senior Project Manager training Project Managers and Implementation Consultants. Pl. Dep. 179:6-21, 182:3-10. Plaintiff also directed the tasks that Implementation Consultants performed and provided feedback regarding Implementation Consultants' performance. Pl. Dep. 75:19-78:9, 155:11-156:25, Ex. 5. These are exempt management duties. *See* 29 C.F.R. § 541.102.

**Defendant's Reply In Support of Summary Judgment – Page 8**

Plaintiff's Response makes no effort to identify any competent summary judgment evidence to create a genuine issue of material fact as to whether Plaintiff's job duties as a Senior Project Manager satisfy the executive exemption. Plaintiff simply asserts that her testimony establishes that: she did not perform executive duties; directed the work of a single employee; and her recommendations were not given particular weight. *See* Pl. Resp. p. 22-23. Plaintiff fails to cite to ***any*** evidence to support of these self-serving and conclusory assertions and, as a result, Plaintiff cannot establish a genuine issue of material fact regarding the executive exemption. *See surpa* n.3.

        2.       <u>The Implementation Analyst Role Satisfies the Administrative Exemption</u>

Again, Plaintiff identifies no competent summary judgment evidence to support her argument that her Implementation Analyst role does not satisfy the administrative exemption. As discussed above, Plaintiff's argument hinges on the inaccurate proposition that the Implementation Analyst role is the same as the Implementation Consultant role at issue in the *Greene* case. But Plaintiff's deposition testimony makes clear that her duties as an Implementation Analyst were entirely distinct from the duties of an Implementation Consultant. Plaintiff testified that, as an Implementation Analyst, her primary duties involved resolving challenging implementation issues escalated to her by Project Managers and Implementation Consultants in order to keep an implementation on track. Pl. Dep. 202:19-22, 215:3-15, 233:21-23. Courts have found these types of duties to be exempt. *See Kennedy v. Ryder Integrated Logistics, Inc.,* No. SA-13-CA-157-FB (RIB), 2014 U.S. Dist. LEXIS 201632, at *17 (W.D. Tex. 2014) (finding plaintiff's advanced problem-solving skills satisfied administrative exemption). Plaintiff's eleventh-hour theory—that she actually performed Implementation Consultant duties as an Implementation Analyst—is not supported by any competent summary judgment evidence, contradicts her sworn deposition testimony, and cannot create a genuine issue of material fact.

**Defendant's Reply In Support of Summary Judgment – Page 9**

### III. <u>PLAINTIFF FAILS TO MEET HER BURDEN TO ESTABLISH WILLFULNESS</u>

Plaintiff's sole evidence in support of her argument that Tyler willfully violated the FLSA is based entirely on Tyler's involvement in prior FLSA litigation.[7] Plaintiff glosses over the fact that the other cases she mentions did not involve her roles of Senior Project Manager or Implementation Analyst.[8] As a result, the prior FLSA litigation involving different positions with different job duties does not satisfy Plaintiff's burden of establishing that the Tyler knew or showed reckless disregard for the classification of the Senior Project Manager and Implementation Analyst roles. *See Lipnicki v. Meritage Homes Corp.*, No. 3:10-CV-605, 2014 U.S. Dist. LEXIS 32951, at *33 (S.D. Tex. 2014) (denying finding of willfulness when "Plaintiffs have presented no evidence that the other cases Meritage has defended involved an outside salesman classification under the FLSA."); *Villegas v. Dependable Construction Services, Inc.*, Civ. No. 4:07-cv-2165, 2008 U.S. Dist. LEXIS 98801 (S.D. Tex. 2008) (denying finding of willfulness because prior FLSA litigation did not resemble the current litigation).

### IV. <u>CONCLUSION</u>

Based on the foregoing, Plaintiff has failed to create a genuine issue of material fact that the Senior Project Manager and Implementation Analyst roles are not exempt under the FLSA. Plaintiff has also failed to introduce competent evidence to establish a genuine issue of material fact on willfulness. As a result, Tyler respectfully requests that the Court grant its motion for summary judgment and dismiss Plaintiff's lawsuit in its entirety with prejudice.

---

[7] Again, most of the recent litigation cited in Plaintiff's Response are cases filed by her attorney in this case.

[8] Plaintiff also ignores Tyler's evidence that its Human Resources and Legal Departments regularly review the job duties and salaries of positions to ensure they are properly classified as exempt. *See* Diaz-Pedrosa Decl. at ¶ 5, ECF No. 14-4.

**Defendant's Reply In Support of Summary Judgment – Page 10**

Dated: September 21, 2022

*/s/ Paulo B. McKeeby*
Paulo B. McKeeby (Lead Attorney)
TX State Bar No. 00784571
pmckeeby@reedsmith.com
Amanda E. Brown
TX State Bar No. 24087839
aebrown@reedsmith.com
Reed Smith LLP
2850 N. Harwood St., Suite 1500
Dallas, TX 75201
Telephone:    +1.469.680.4200
Facsimile:    +1.469.680.4299

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 21, 2022, a true and correct copy of the above was filed using the Court's CM/ECF system that caused notice to be served upon the following:

Charles R. Bridgers
Matthew W. Herrington
DeLong Caldwell Bridgers Fitzpatrick & Benjamin, LLC
101 Marietta St.
Ste. 2650
Atlanta, GA 30303
charles.bridgers@dcbflegal.com
matthew.herrington@dcbflegal.com

Melinda Arbuckle
Shellist Lazarz Slobin LLP
11 Greenway Plaza
Suite 1515
Houston, TX 77046
marbuckle@eeoc.net

*/s/ Paulo B. McKeeby*
Paulo B. McKeeby