IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| TALIA N. HARRISON,<br><br>      Plaintiff,<br><br>vs.<br><br>TYLER TECHNOLOGIES, INC.,<br><br>      Defendant. | Civil Action No. 4:21-cv-607-ALM |

**REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS**

Plaintiff Talia N. Harrison files this Reply in support of her Motion for an order awarding attorney's fees and costs of litigation pursuant to 29 U.S.C. § 216(c), showing the Court as follows:

**1.   Introduction**

Plaintiff had a *single overtime claim* in this case. Defendants raised numerous complete and partial defenses and succeeded on *one* partial defense at summary judgment, relating to one of the two positions that Plaintiff worked in. Now, Defendant argues without proper factual or legal support that Plaintiff's award of attorney's fees should be reduced by nearly two thirds.

**More than a year ago, Plaintiff offered to settle this case for $20,000 plus fees and costs at mediation**. (*See* Ex. 1 (correspondence from opposing counsel and mediator's proposal from Will Pryor)). This occurred before significant discovery, before motion practice, and long before summary judgment. Defendant rejected that offer. After summary judgment, which Defendant says was a disaster for Plaintiff, **Plaintiff obtained a settlement for $23,000 plus fees and costs**—a favorable outcome and not the supposed "lack of success" Defendant claims.

Moreover, Defendant argues Plaintiff's counsel engaged in improper billing. As shown below, Plaintiff's request for fees and costs is entirely reasonable and should be awarded in full.

**2.       Plaintiff Was Not *Partially* Successful**

Here, Defendant received a partially successful summary judgment ruling. Respectfully, Plaintiff believes that the Court erred in holding that she fell within the scope of the FLSA's administrative exemption and planned to appeal that ruling after trial. However, as Defendant was ultimately willing to settle her overtime claim at an amount that Plaintiff considered reasonable—providing value to Plaintiff for the *entirety* of her overtime claim—Plaintiff was willing to forego that appeal right and end the litigation sooner rather than later.

It is entirely speculative for Defendant to claim only partial success by Plaintiff when no final judgment was rendered, and it is impossible to analyze how much she would have recovered for both employment periods at issue. While most of the three-year statutory period related to the Implementation Analyst position that the Court found to be exempt, Plaintiff testified that she worked significantly more overtime during her time as a Project Manager. Dkt. 14-1 (Deposition of Talia Harrison), pp. 176:1–7; 233:4 to 234:9. It is also possible that good faith or willfulness might have affected the amount of recovery as to one or the other employment periods. In other words, there is no *objective* way to accurately reconstruct how Plaintiff's damages would have differed with or without the Implementation Analyst hours included. And, of course, assuming that Plaintiff's appeal would have been unsuccessful.

The ***best objective measure*** of Plaintiff's success in this case is what she was willing to settle the case for before summary judgment, and then what she ultimately obtained in settlement after summary judgment. Such analysis does not support Defendant's position that Plaintiff was only partially successful in this case. In fact, it clearly shows the opposite.

In January 2022, early in this case, the Parties attended a mediation with Will Pryor. The mediation ended unsuccessfully with a final demand from Ms. Harrison for $20,000 plus fees and costs to be determined by the Court. Defendant's final offer at mediation was $8,000 plus fees and costs. After mediation, Defendant served a Rule 68 Offer of Judgment for $15,000 plus fees and costs. It was not accepted. *See* Exhibit 1, *passim*.

Defendant argues the Court's partial ruling on summary judgment renders Plaintiff only partially successful in this litigation and only partially entitled to recover her attorney's fees. But the actual numbers that the parties were willing to put on the table belie that facile analysis. A year after the mediation—and after the Court issued its summary judgment Order—the **Parties ultimately settled for $23,000** with the Court to determine fees and costs. Thus, after summary judgment, Plaintiff obtained a settlement **substantially more favorable** than what she had offered to Defendant a year previously. That is no partial success. Objectively, it was a very favorable result. And that **result** is the only objective measure available to evaluate Plaintiff's success.

While courts do not reduce attorney fees *solely* on the basis of the amount of damages obtained, *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 262–63 (5th Cir. 2018) (Ho, J., concurring) (quotation omitted), that does not alter the fact that "[t]he most critical factor in determining an attorney's fee award is the 'degree of success obtained.' " *Id.* (quoting *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006)). As Judge Ho explained in that concurrence, "[t]hese principles are not in conflict. . . . Attorney time must be spent in service of the best interests of the client. So where attorney time exceeds client value to a significant degree, courts should be suspicious. The overarching question that courts should ask in such circumstances is whether the attorney expended the time in a good faith pursuit of value for the client — or was instead engaged in churning attorney fees." *Id.*

As shown in Matthew W. Herrington's declaration, analysis of the facts and law in this case was all of one piece. (*See* Ex. 2 (Herrington Decl.,), *passim*). While the Court found a distinction at summary judgment between Plaintiff's two job positions, counsel treated the entirety of her employment as of a single piece. Plaintiff's own characterization of her duties as being essentially the same in both positions supported this strategy. *Id*. No significant time was spent on issues solely relating to the Implementation Analyst position, and no significant time could have been omitted if only the Project Manager position had been considered. Nothing about that distinction affected the work that counsel performed on this case, other than a negligible amount of additional time spent on a section of Plaintiff's response brief at summary judgment.

**3.     No Adjustment of the Lodestar is Warranted**

The Supreme Court has described the lodestar figure as "the guiding light of our fee-shifting jurisprudence." *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002) (*quoting Burlington v. Dague*, 505 U.S. 557, 562 (1992)). It has stressed the reasonableness of the lodestar amount as a "strong presumption" which may be overcome in "rare circumstances." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554, 130 S. Ct. 1662 (2010); *see also 5 Larson on Employment Discrimination* § 97.09 (2023).

Defendant misrepresents the proper use of the *Johnson* factors—which may sometimes be used to justify a modification of the lodestar—when it states that:

> After calculating the lodestar—the number of hours reasonably spent on the case multiplied by an appropriate hourly rate in the community for such work—***the court may decrease the lodestar amount based on the twelve Johnson factors***.

Dkt. 47, pg. 4 (emphasis added). The *Johnson* factors may guide a district court in ***either increasing or decreasing*** the lodestar. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006) ("After calculating the lodestar, the court may decrease or enhance the amount based on the relative weights of the twelve factors set forth in *Johnson*."). Of course, some of the

factors are already incorporated into the lodestar and may not be counted twice, and the others are applicable only in very special circumstances given the presumed validity of the lodestar. *Perdue v. Kenny A.*, 559 U.S. 542, 552, 130 S. Ct. 1662 (2010); *see also 10 Moore's Federal Practice - Civil* § 23.124 (2023) ("Supreme Court has disfavored adjustments to the lodestar, showing a marked preference for a single step inquiry").

Defendant argues that Plaintiff's fee should be reduced from the lodestar because:

- The case was not novel or especially difficult;
- Plaintiff's counsel was not precluded from accepting other cases;
- The lodestar would compensate Plaintiff's counsel more than a traditional contingency arrangement; and
- The case was not undesirable.

Dkt. 47, pp. 6–12. It does so in only the most general and generic terms and identifies nothing that could be called special circumstances.

The issues of novelty and complexity are fully reflected in the number of billable hours recorded by counsel and thus do not support modification of a fee based on the number of billable hours multiplied by reasonable hourly rates. *See Blum v. Stenson*, 465 U.S. 886, 898-99 & n.16, 104 S. Ct. 1541, 1549 (1984); *see also 5 Moore's Federal Practice - Civil* § 23.124 (2023).

Defendants also argue—generically, and with no meaningful explanation—that the lack of novelty in this case warrants reduction of the lodestar. Defendant having provided no specific evidence in support of this characterization; Plaintiff has nothing to rebut. Plaintiff would also note that this factor is already subsumed in the lodestar amount and cannot properly be considered with respect to adjustments of the lodestar. *Geoffrion v. Nationstar Mortg. LLC*, No. 4:14-cv-350, 2016 U.S. Dist. LEXIS 62723, at *5 (E.D. Tex. May 12, 2016) (citing *Heidtman v. Cty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999)); *see also Blum v. Stenson*, 465 U.S. 886, 898–900, 104 S. Ct.

1541 (1984), *Pierce v. Underwood*, 487 U.S. 552, 573, 108 S. Ct. 2541, 2554 (1988) (" 'novelty and difficulty of issues,' 'the undesirability of the case,' the 'work and ability of counsel,' and 'the results obtained,' . . . are factors applicable to a broad spectrum of litigation; they are little more than routine reasons why market rates are what they are.").

As to Defendant's argument regarding the contingency vs. traditional fee arrangement, the Supreme Court has barred any use of that sixth *Johnson* factor. *See Halupka v. Fed. Express Corp.*, No. 4:03-cv-350, 2006 U.S. Dist. LEXIS 115957, at *15 (E.D. Tex. June 22, 2006) (citing *Walker v. U.S. Dept. of Hous. and Urban Dev.*, 99 F.3d 761, 772 (5th Cir. 1996)).

Finally, Defendant claims that because this case was not undesirable, that the lodestar must be reduced. Again, Defendant provides no specific facts and not a single example of the lodestar being adjusted downward because the case was not remarkably undesirable. This argument is silly and nothing more can be said about it.

In short, Defendant has made not even the barest showing of special circumstances that would warrant deviating from the strong presumption that the lodestar is the reasonable fee. No adjustment to the lodestar can be supported on this record.

**4.      Plaintiff's Counsel's Billing Was Appropriate**

Plaintiff is ready to concede a small portion of the fees that Defendant describes as improper, but simply to save the Court's resources.

**Amended Complaint**

Plaintiff already reduced the section "04-Amended Complaint/Answer" by $858.00 by no charging another entry. To simplify the Court's effort, **<u>Plaintiff withdraws this request for $234.00.</u>**

**Depositions**

As to time spent in connection with depositions, Defendant's arguments miss the mark. Plaintiff's billabless (Dkt. 44-7 through 44-8) demonstrate most of the effort in this category ($3,978) is related to Plaintiff's deposition: On January 18, 2022, Mr. Herrington notes, "Review client documents; deposition preparation meeting with client" and on January 19, 2022, the entry reads, "Deposition of client; calls with CRB [Charles R. Bridgers] re deposition issues; meetings with clients." These entries are simple, clear, and directly related to one aspect of a day's work. The Court should disregard Defendant's boilerplate claims that these entries are "block billing".[1]

While the entries for **Mr. Bridgers under "Depositions" ($365.40)** are appropriate for planning and reference, **Plaintiff withdraws them** from the Motion because the amounts are too small to justify the Court's attention.

**Motions**

Defendant is correct that most of the entries under the "Motion" category are for the Fee Petition and then downplay the motion as "routine." First, undersigned counsel's "routine" practice in FLSA cases is to agree with the opposing party on the amount of fees, which Defendant and its counsel refused to discuss in any meaningful way. Instead, Defendant forced Plaintiff to file this

---

[1] As the Fifth Circuit has explained: "practical considerations of the daily practice of law in this day and age preclude 'writing a book' to describe in excruciating detail the professional services rendered for each hour or fraction of an hour." *League of United Latin American Citizens No. 4552 (LULAC) v. Roscoe Ind. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997) (quoting *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995). Courts may examine the reasonableness of billing entries based on "the number of hours spent on such tasks, the more detailed entries surrounding them, and their dates of entry, which indicates the point in the proceedings in which the particular services were rendered." *Olibas v. Native Oilfield Servs., LLC*, 104 F. Supp. 3d 791, 811-12 (N.D. Tex. 2015). Plaintiff has no fear that the Court will immediately recognize that her counsel's efforts in this case were extremely efficient and that no unnecessary billing occurred.

Motion and Reply. Also, Defendant's position that this was Motion is "routine" is belied by the fact that it is opposing the Motion and billing entries on an almost line-by-line basis.

Substantively, Defendant's analysis of the Motion as only 6 pages ignores the actual effort required. This Motion required substantial declarations from three attorneys and dozens of pages of exhibits. Every line of these sworn statements and billing records had to be scrutinized. The time actually incurred was in excess of the estimates. This reply brief alone has taken more than 7 hours of attorney time, far in excess of Plaintiff's initial request.[2] No reduction is appropriate.

**Legal Research, Miscellaneous Case Efforts, and Factual Development**

Initial decisions—including where to bring a case and what theories to use—are important strategic decisions that can impact the entire course of the litigation. Plaintiff's overtime claim was successful because of these decisions. Reasoned consideration and conversation among counsel is, therefore, necessary and appropriately billed. Similarly, supervisory direction to other staff members serves the purpose dividing work appropriately so that the least expensive staff member capable of doing a task actually does so. The most senior attorney on the case naturally provided supervision to ensure that that more junior attorney's decisions were sound. That is the heart of efficient delegation of legal duties. Defendant's generalized and unspecific objections criticizing these efforts necessarily fail. Again, though, Plaintiff is not seeking to force this court into a nickel-and-dime analysis. **Plaintiff will withdraw** the following time entries (8/3/2021 for **$43.50**; 9/29/201 for **$43.50**; and 7/22/2022 for **$43.40**), for just to avoid wasting the Court's time.

**Legal Research, Miscellaneous Case Efforts, and Factual Development**

---

[2] Undersigned counsel Bridgers and Herrington state this sentence "in their place" as if under oath.

Defendant's complaints regarding legal research relate to time spent on what it calls "abandoned legal theories." It points to a small amount of time spent researching the "necessity of pleading affirmative defenses and standard for more definite statement motion" and concludes that this research was unnecessary because no such motion was filed. This argument is nonsense. The question at hand is whether the effort was reasonably undertaken. As Judge Ho explained in his concurrence in *Gurule v. Land Guardian, Inc.*,

> To be sure, not every attorney task will ultimately pay off for the client, even amongst the most conscientious of counsel. A legal theory might seem genuinely promising at the outset, but ultimately bear no fruit. Attorney time may be reasonably spent, even if it does not actually result in client value.

912 F.3d 252, 262 (5th Cir. 2018). Here, Plaintiff's counsel—in their professional judgment—undertook a small amount of legal research to examine whether more explicit pleadings could be demanded from the Defendant. Plaintiff's counsel ultimately decided not to do so, but Defendant has made no showing that such minor investigations into the issue were unreasonable.

Defendant also complains that Plaintiff went to great lengths to obtain document production from it—unwillingly—and then didn't even use any of those documents at summary judgment. Defense counsel can perhaps be forgiven for forgetting that litigation does not end at summary judgment. This case very well could have proceeded to trial. Here, Plaintiff obtained voluminous emails that evidenced the day-to-day work of Plaintiff to protect against later mischaracterizations by Defendant of her job duties.[3] As necessary as it was to obtain these

---

[3] Such fears are well-founded given the history of this Defendant and this defense counsel's history of dishonesty before the court. *See Greene v. Tyler Techs.*, 526 F. Supp. 3d 1325, 1331 n.5 ("it is exasperating that Tyler advances this argument when, throughout its briefing, it misrepresents and stretches Plaintiff's testimony. . . . To characterize this as 'undisputed evidence' . . . is disingenuous. Similarly, Defendant mischaracterizes Plaintiff's brief . . . . The Court has discovered other examples of this stretching of the actual testimony, as well. These slanted and inaccurate representations are not appreciated. The Court expects better.").

documents, they were not necessary to defend against a motion for summary judgment. This is because Plaintiff Harrison could very easily show the court a dispute of material fact through a simple declaration, which she did. Thus, given the relevant burden, there was no reason to scour or present thousands of emails. In fact, spending dozens of hours organizing and quantifying those emails would have been nothing short of the "churning" that *Gurule* warns against. Counsel did not undertake unnecessary efforts at any stage of this litigation. But that does not decrease the value of getting the document production that Plaintiff fought so long and so hard to obtain.

As to several of the smaller entries of "unproductive" time that Plaintiff's counsel allegedly spent, Plaintiff cannot tell which ones are opposed. All identifiable entries are appropriate:

- The Bridgers entry for $69.60 on 4/12/2022 relates to a discussion about discovery. The Bridgers entry for $93.50 on 3/3/2022 is a conversation on the strategy for opposing Defendant's summary judgement Motion. For the reasons stated above, such strategic consultation is not only appropriate, but it is critical to a successful case outcome.

- As to Mr. Herrington's entries, the 2/24/2022 entry ($109.20) relates to an 18-minute discussion with co-counsel on a protective order. This Protective Order, brought to the Court on a joint motion, was eventually entered in this case. (Dkt. 21) Defendants have raised no substantive reason that this order was wasteful or unnecessary.

- As to the entries for $1,053 on August 25, 2022, and for $507.00 on August 29, 2022, Defendant apparently criticizes Mr. Herrington's review of documents produced in the litigation. Not reviewing evidence would have been foolish on counsel's part. Charging for doing so is, therefore, appropriate.

Plaintiff will, however, **withdraw the $17.00 entry** for J. Sorrenti, paralegal, from April 25, 2022, to simplify the Court's analysis.

**5.    Conclusion**

Based on the foregoing, Plaintiff requests that the Court issue a final judgment in her favor including **$25,806.70 in attorney's fees** (i.e., $26,553.50 less $746.80 ($234.00 + 365.40 + $43.50 + $43.50 + $43.40 + $17.00) and **$1,271.00 in costs**.

Respectfully submitted this 20th day of April 2023,

        **DELONG CALDWELL BRIDGERS FITZPATRICK & BENJAMIN, LLC**

        *s/ Charles R. Bridgers*
        Charles R. Bridgers (*pro hac vice*)
        charlesbridgers@dcbflegal.com
        *s/ Matthew W. Herrington*
        Matthew W. Herrington (*pro hac vice*)
        matthew.herrington@dcbflegal.com
        101 Marietta St.
        Ste. 2650
        Atlanta, GA 30303
        (404) 979-3150
        (404) 979-3157 (fax)

        **WAGE AND HOUR FIRM**

        *s/ Melinda Arbuckle*
        Melinda Arbuckle
        TX State Bar No. 24080773
        marbuckle@wageandhourfirm.com
        400 North St. Paul Street
        Dallas, TX 75201
        c: (214) 577-0258

        **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

On April 21, 2023, I filed the foregoing document with the Clerk of Court using the CM/ECF system of the Court. I certify that all counsel of record were served electronically thereby.

        s/Melinda Arbuckle
        Melinda Arbuckle

# EXHIBIT 1

**Subject:** RE: Harrison/Tyler - call
**Date:** Monday, November 14, 2022 at 4:30:37 PM Western European Standard Time
**From:** Brown, Amanda E.
**To:** Matthew Herrington, Charles R. Bridgers
**CC:** McKeeby, Paulo B.

Matthew:

Based on our notes, the mediation ended with Plaintiff's demand of $20k + briefing on fees in response to Tyler's offer of $8k + briefing on fees. The mediator then sent a mediator's proposal of $25k for a global resolution. After the mediator's proposal expired, Tyler sent Plaintiff an offer of judgment for $15k + briefing on fees, which Plaintiff rejected.

We also want to note that the impact of the SJ ruling on the potential recovery period will be a factor in Tyler's settlement evaluation. As you know, Plaintiff was in the IA role for 2/3 of the limitation period (assuming a 3 year SOL).

We look forward to receiving Plaintiff's demand.

Thanks,

**Amanda E. Brown**
aebrown@reedsmith.com
+1 469 680 4232 (Dallas)
+1 713 469 3822 (Houston)
+1 512 289 2351 (cell)



4851 LBJ Freeway, Suite 220
Dallas, Texas  75244
214.534.1990

wpryor@willpryor.com
www.willpryor.com

January 10, 2022

**Mediator's Settlement Proposal:**
*Talia Harrison v. Tyler Technologies, Inc.*

| | |
|---|---|
| Matthew Harrington | *via email matthew.herrington@dcbflegal.com* |
| Delong Caldwell Bridgers | |
| | |
| Amanda Brown | *via email aebrown@reedsmith.com* |
| Reed Smith LLP | |

Dear Counsel:

   Thank you for your patience, professionalism and good humor during our recent mediation.  I regret that we were not successful in our efforts to resolve this

matter.  I thought it would do no harm to offer this proposal.

   Please respond by 5:00 pm (CST), tomorrow, January 11, 2022.  Please reply regardless of whether the response is positive or negative.  If you need additional time to respond, please let me know.

   **You are guaranteed confidentiality.  I do not disclose either response unless both of the responses are "yes".**

   Very best wishes.

                    Sincerely,

                    Will Pryor

## Mediator's Settlement Proposal

Plaintiff agrees to accept, and Defendant agrees to pay, the total sum of $25,000.00, in full and final settlement of all claims.  Settlement proceeds to be paid on or before January 28, 2022.

All parties agree to preserve the confidentiality of the terms of the settlement.

Plaintiff will execute full, complete, and general release.

All parties to bear their own attorney's fees, costs and expenses.

Pending litigation to be dismissed, with prejudice.

Responses:

_____   _____
Yes         No
_____
Matthew Herrington, Counsel for Plaintiff


_____   _____
Yes         No
_____
Amanda Brown, Counsel for Defendant

# EXHIBIT 2

EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| TALIA N. HARRISON, **Plaintiff,** vs. TYLER TECHNOLOGIES, INC., **Defendant.** | Civil Action No. 4:21-cv-607-ALM |

### SECOND DECLARATION OF MATTHEW W. HERRINGTON

Attorney Matthew W. Herrington hereby submits his declaration, pursuant to 28 U.S.C. § 1746, in support of Plaintiff Talia Harrison's Motion for Award of Attorney's Fees and Costs Pursuant to the Fair Labor Standards Act.

1.  My name is Matthew W. Herrington. I am over the age of twenty-one (21) and suffer from no legal disabilities. I make the following Declaration based on my personal knowledge as well as the contemporaneous business records of my firm.

2.  During the litigation of Plaintiff Talia Harrison's overtime claim against Defendant Tyler Technologies, Inc., I was aware that Ms. Harrison had worked for Tyler in two distinct but related positions.

3.  As Ms. Harrison has previously testified to, the work she performed in her second position as Implementation Analyst was the very same work she had been performing in her previous position as Project Manager. The primary—and possibly only—difference was that she no longer had supervisory duties for an Implementation Consultant, and she no longer needed to bill directly to client cases or regularly travel to client worksites. But

1

<blockquote>

the day-to-day of the work she performed was no different than 50% of the work she had previously performed in her role as a Project Manager.

4. Because these positions were so similar and the duties overlapped in every relevant way, it was not necessary for me to conduct significant additional discovery or additional legal research as to the Implementation Analyst position. The work that Ms. Harrison performed in that position was completely subsumed within her duties as a Project Manager. Every aspect of her job duties as Implementation Analyst was also relevant to her duties as a Project Manager.

5. I spent no substantial additional time working on this case as a result of the fact that Plaintiff worked in two positions during the course of her employment, other than the small amount of time it took to brief a few additional paragraphs in Plaintiff's response to Defendant's Summary Judgment Motion.

6. No job duties related solely to Plaintiff's position as Implementation Analyst and thus the overwhelming majority of the work on this case would have been performed identically whether or not she had worked in multiple positions.

</blockquote>

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 20, 2023

*s/ Matthew W. Herrington*
Matthew W. Herrington
Georgia Bar No. 275411

2