# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| TALIA N. HARRISON, | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | Civil Action No. 4:21–CV–607 |
| | § | Judge Mazzant |
| TYLER TECHNOLOGIES, INC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Plaintiff's Motion for Award of Attorney's Fees and Costs Pursuant to the Fair Labor Standards Act (Dkt. #46). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **GRANTED in part**.

## BACKGROUND

This case arises out of an employer-employee relationship between Plaintiff Talia N. Harrison ("Harrison") and Defendant Tyler Technologies, Inc. ("Tyler") (Dkt. #36 at p. 1). While working for Tyler, Harrison served as a Project Manager and an Implementation Analyst (Dkt. #36 at pp. 2–5). Harrison claimed that Tyler did not compensate her with overtime pay, which is legally required under the Fair Labor Standards Act ("FLSA") when she worked more than forty (40) hours a week (Dkt. #36 at p. 1).

On August 3, 2021, Harrison sued Tyler for failure to make overtime payments under the FLSA and alleged that Tyler did so willfully (Dkt. #36 at p. 6). On February 22, 2022, Tyler filed a motion for summary judgment (Dkt. #14). On November 2, 2022, the Court partially granted Tyler's motion for summary judgment, dismissing Harrison's claim for the duration that she was

an Implementation Analyst because she was exempt under the FLSA from receiving overtime pay (Dkt. #36). However, the Court did not dismiss Harrison's claim for the duration that she was a Project Manager (Dkt. #36).

On February 27, 2023, Harrison and Tyler filed a joint motion for settlement approval (Dkt. #40). The parties determined that a payment of $23,000, with fees and costs to be determined by the Court, "is a reasonable and fair compromise of [Harrison's] claims" (Dkt. #40 at p. 3; Dkt. #41 at p. 2). The settlement agreement stated that Tyler did not admit wrongdoing or liability (Dkt. #41 at p. 4). In their joint motion, Harrison stated that she would attribute approximately 42.42% ($11,659) of her damages to her Project Manager position and 57.58% ($15,823) of her damages of her damages to her Implementation Analyst position (Dkt. 40 at p. 3). Harrison further estimated that the maximum judgment she could have received was approximately $54,964, not including fees and costs, if the Court awarded liquidated damages (Dkt. #40 at p. 3). On March 6, 2023, the Court entered an order approving the parties' joint motion for settlement approval (Dkt. #43).

Harrison's counsel previously served in counsel in two other cases where former employees asserted FLSA claims against Tyler. *See Wright v. Tyler Techs.*, No. 4:20-CV-454 (E.D. Ark.); *Greene v. Tyler Techs.*, No. 1:19-CV-1338 (N.D. Ga). One case ended in a settlement agreement for an undisclosed amount. *Greene*, *Order*, No. 1:19-CV-1338, Dkt. #87 (N.D. Ga. Mar. 12, 2020). The other case ended in 2023, when the plaintiff accepted an offer of judgment against Tyler for $4,500. *Wright*, *Judgment*, No. 4:20-CV-454, Dkt. #49 (E.D. Ark. Jan. 10, 2023). Through these cases, Tyler claims that Harrison's counsel obtained knowledge of Tyler's business

and familiarity with Tyler's legal arguments as to the exempt classification of its employees (Dkt. #47 at p. 11).

On March 21, 2023, Harrison filed the present motion seeking attorney's fees and costs (Dkt. #46). Specifically, Harrison seeks $25,810.95 in attorney's fees and $1,271.00 in costs (Dkt. #46 at p. 1).[1] On April 4, 2023, Tyler filed its response, claiming that Harrison should only receive $9,798.13 in awarded attorney's fees (Dkt. #47). However, Tyler does not object to Harrison's requested $1,271.00 in costs (Dkt. #47 at p. 1 n.1). On April 24, 2023, Harrison filed her reply (Dkt. #53).

## LEGAL STANDARD

### I.    Attorney's Fees

Attorney's fees and costs are recoverable under the FLSA. 29 U.S.C. § 216(b). Harrison's requested lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate that is the market rate in the community for this work. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). The computation of a reasonable attorney's fee award is a two-step process. *Rutherford v. Harris Cnty.*, 197 F.3d 173, 192 (5th Cir. 1999) (citation omitted).

The Court first calculates the "lodestar" by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). "A reasonable hourly rate is the prevailing market rate in the relevant legal

---

[1] Originally, Harrison requested $26,553.50 in attorney's fees (Dkt. #46 at p. 1). However, the Court derives the value of $25,810.95 after recalculating each entry and subtracting various requested amounts that Harrison has withdrawn (*See* Dkt. #46, Exhibit 2 at pp. 16–28; Dkt. #53 at pp. 6–8, 10).

3

community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984). The relevant legal community is the community where the district court sits. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).

The party seeking reimbursement of attorney's fees bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence. *See Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996); *La. Power & Light Co. v. KellStrom*, 50 F.3d 319, 324 (5th Cir. 1995); *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *Id.* The hours remaining are those reasonably expended. *Id.* There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).

After calculating the lodestar, the Court then considers whether the circumstances of the particular case warrant an upward or downward lodestar adjustment. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). In making any lodestar adjustment, the Court looks to twelve *Johnson* factors. *Id.* (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The *Johnson* factors are:

> (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.

*Id.* (citing *Johnson*, 488 F.2d at 717–19). After considering the twelve *Johnson* factors, the Court may adjust the lodestar upward or downward. *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993). "If the plaintiff obtained limited success, the hours reasonably spent on the case times the reasonable hourly rate may be excessive." *Verginia McC v. Corrigan-Camden Indep. Sch. Dist.*, 909 F. Supp. 1023, 1032 (E.D. Tex. 1995). "'[T]he most critical factor' in determining the reasonableness of [an attorney's fee award] . . . 'is the degree of success obtained.'" *Giles v. GE*, 245 F.3d 474, 491 n.31 (5th Cir. 2001) (quoting *Farrar v. Hobby*, 506 U.S. 103, 113 (1992)); *see also Migis*, 135 F.3d at 1047. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Verginia McC*, 909 F. Supp. at 1032 (quoting *Hensley*, 461 U.S. at 436). "Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted." *Jason D.W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (internal citations omitted).

The lodestar is presumptively reasonable and should be modified only in exceptional cases. *Watkins*, 7 F.3d at 457. The fee-seeker must submit adequate documentation of the hours reasonably expended and of the attorney's qualifications and skill, while the party seeking reduction of the lodestar must show that a reduction is warranted. *Hensley*, 461 U.S. at 433; *La. Power & Light Co.*, 50 F.3d at 329.

## II.    Court Costs

According to Rule 54(d) of the Federal Rules of Civil Procedure, costs shall be allowed as a matter of course to the prevailing party in a civil action. However, not all expenses incurred by a party can be reimbursed. *Honestech, Inc. v. Sonic Sols.*, 725 F. Supp. 2d 573, 581 (W.D. Tex. 2010).

Pursuant to 28 U.S.C. § 1920, a judge or clerk of any court of the United States may tax as costs the following: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court-appointed experts and interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828. *Id.*

## ANALYSIS

Harrison seeks to recover an award of $25,810.95 in attorney's fees and $1,271.00 in costs (Dkt. #46 at p. 1). The Court addresses both requests in turn.

## I.    Attorney's Fees

The Court addresses Harrison's request for attorney's fees in three steps: (1) Harrison's eligibility for attorney's fees; (2) the reasonableness of Harrison's attorney's fees; and (3) any reduction to the awarded attorney's fees pursuant to the *Johnson* factors.

### A.    Eligibility for Attorney's Fees

Harrison and Tyler's settlement agreement provides that "the Court shall award reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216 upon a fee application by [Harrison]" (Dkt. #41 at p. 2). Pursuant to 29 U.S.C. § 216(b), "[t]he [C]ourt . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Based on this settlement agreement and the Court's approval of the settlement agreement, the Court finds that an award of attorney's fees is appropriate.

**B.      Reasonableness of Attorney's Fees**

In awarding attorneys' fees, the starting point is to calculate a base lodestar figure, which is reached by determining the reasonable hours worked multiplied by a reasonable hourly rate. *See Smith & Fuller, P.A.*, 685 F.3d at 490. "There exists a strong presumption of the reasonableness of the lodestar amount." *Saizan*, 448 F.3d at 800.

Harrison seeks $25,810.95 in attorney's fees. In support of her motion for attorney's fees, Harrison has attached multiple exhibits. The first exhibit is a declaration from Harrison's counsel, Melinda Arbuckle ("Arbuckle") (Dkt. 46, Exhibit 1 at pp. 1–4). Attached to this exhibit are Arbuckle's billing records (Dkt. #46, Exhibit 1 at p. 97). The second exhibit is a declaration from Harrison's counsel, Charles R. Bridgers ("Bridgers") (Dkt. #46, Exhibit 2 at pp.1–15). Attached to this exhibit are the billing records of Bridgers and his co-counsel, Metthew W. Herrington (Dkt. #46, Exhibit 2 at pp. 16–55).

**1.      Reasonable Hourly Rate**

"The reasonable hourly rate is the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *BMO Harris Bank, N.A. v. RidgeAire, Inc.*, No. 6:12-cv-550, 2014 WL 12612803, at *1 (E.D. Tex. June 4, 2014) (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). The relevant legal community is the community where the district court sits. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). "The fee applicant bears the burden to prove by competent evidence that the requested rate is reasonable." *Powell v. Comm'r*, 891 F.2d 1167, 1173 (5th Cir. 1990). Parties usually establish the reasonable hourly rate by providing affidavits of other attorneys practicing in the community. *Tollett*, 285 F.3d at 368. However, "[t]he affidavits of counsel may alone be sufficient proof" to establish the reasonable

hourly rate. *Smith & Fuller, P.A.*, 685 F.3d at 491. The trial court itself is also considered an expert as to the reasonableness of attorney's fees and therefore may exercise its own expertise and judgment in making an independent valuation of appropriate attorney fees. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (citing *In re TMT Trailer Ferry, Inc.*, 577 F.2d 1296, 1304 (5th Cir. 1978)).

The fees of Harrison's counsel ranged from $390 to $435 (Dkt. #1, Exhibit 1 at pp. 2–3; Dkt. #46, Exhibit 2 at p. 5).[2] Arbuckle states in her declaration that the billing rates her co-counsel are in line with attorney's fees awarded in federal district courts in the state of Texas, including the Eastern District of Texas (Dkt. #46, Exhibit 1 at pp. 2–3). She submitted a detailed attachment to her declaration describing the billing rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation (Dkt. #46, Exhibit 1 at pp. 13–96). Bridgers states in his declaration that the rates he and Herrington charged are reasonable in the Atlanta and have been previously approved by numerous courts (Dkt. #46, Exhibit 2 at pp. 5–8). However, Bridgers does not describe how these rates are reasonable in the Eastern District of Texas.

With over ten (10) years of experience practicing law in Texas and her detailed declaration, Arbuckle is clearly qualified to opine on prevailing market rates.[3] And affidavits from attorneys who did not bill on the matter are not required because "[t]he affidavits of counsel may alone be sufficient proof" to establish the reasonable hourly rate. *See Smith & Fuller, P.A.*, 685 F.3d at 491.

---

[2] Additionally, one senior paralegal charged a rate of $170 (Dkt. #46, Exhibit 2 at p. 5).

[3] Arbuckle has been a licensed attorney in Texas for approximately 11 years and specializes in FLSA cases (Dkt. #46, Exhibit 1 at p. 1). She is also licensed to practice law in California, all federal district courts in California and Texas, the District of Colorado, the District of New Mexico, the Western District of Arkansas, the Northern District Ohio, the Western District of Oklahoma, the Fifth Circuit, and the Ninth Circuit (Dkt. #46, Exhibit 1 at p. 1).

Therefore, Arbuckle's declaration combined with other information provided to the Court, is sufficient evidence of the prevailing market rates.

The Court notes that Tyler does not contest the reasonableness of the hourly rates charged in this case. Although the parties have provided little explanation on how Senior Paralegal Jessica Sorrenti's rate is reasonable, the Court finds this rate to be reasonable. Considering the experience and nature of Harrison's counsels' years of experience and the nature of this case, the Court finds the hourly rate of $435.00 for Bridgers and $390.00 for Herrington to be reasonable.[4] These rates are consistent with the prevailing market rate for either the Sherman or the Dallas-Fort Worth legal community.[5] *See, e.g., Natour v. Bank of Am., N.A.*, No. 4:21-CV-00331, 2022 WL 3581396, at *3–4 (E.D. Tex. Aug. 19, 2022) (finding a rate of $385.00 per hour to be a reasonable charge); *Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co.*, No. 3:16-CV-02355-G-BT, 2021 WL 6428370, at *6 (N.D. Tex. Dec. 17, 2021) (finding a range from $537.00 to $862.00 per hour to be a reasonable rate to charge); *Tech Pharm. Servs., LLC v. Alixa Rx LLC*, 298 F. Supp. 3d 892, 906–07 (E.D. Tex. 2017) (finding a range from $450.00 to $860.00 per hour to be a reasonable rate to charge for attorneys).

## 2.  Hours Expended

The party seeking reimbursement of attorney's fees also bears the burden of establishing the number of hours expended by presenting adequately recorded time records as evidence. *See Riley*, 99 F.3d at 760. The Court should only include those hours reasonably expended, and exclude

---

[4] The Court does not address Arbuckle's rate because Harrison did not request any fees for her work (*See* Dkt. #46 at p. 1; Dkt. #46, Exhibit 1 at p. 97; Dkt. #46, Exhibit 2 at pp. 10–12, 16–28).

[5] This Court has previously found that the Dallas-Fort Worth legal market can be an appropriate guide for determining the reasonableness of rates. *See Solferini v. Corradi USA, Inc.*, No. 4:18-cv-293-ALM, 2021 WL 5415293, at *5 (E.D. Tex. Nov. 19, 2021) (collecting cases).

any time that is excessive, duplicative, unnecessary, or inadequately documented. *Id.* Further, "[a] party seeking attorneys' fees is 'required to segregate fees between claims for which they are recoverable and claims for which they are not.'" *Domain Prot., LLC v. Sea Wasp, LLC*, No. 4:18-CV-792, 2020 WL 4583464, at \*7 (E.D. Tex. Aug. 10, 2020) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006)). However, there is an exception to the duty to segregate when the fees are inextricably intertwined. *Tony Gullo Motors*, 212 S.W.3d at 313–14. The fees do not have to be segregated "when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined." *Id.*

The Court finds that the segregation of Harrison's attorney's fees is not an issue in this case because she only had a single claim for overtime pay (Dkt. #1 ¶¶ 46–51). Although Harrison sought damages for unpaid overtime compensation in two different positions, these damages still derive from a single claim (Dkt. #1 ¶¶ 46–51; *see* Dkt. 40 at p. 3). The Court addresses the issue of lack of success relating to a portion of these damages in its analysis of the *Johnson* factors. *See infra* Part I.C.1.

Harrison seeks to recover $25,810.95 in attorney's fees within the following categories:

| Category | Hours Billed | Amount Billed | Percentage of Total Fees Sought[6] |
|---|---|---|---|
| Intake | 1.85 hours | $736.80 | 2.86% |
| Complaint Drafting | 2.10 hours | $819.00 | 3.17% |
| Answer & Other Disclosures | 1.87 hours | $745.95 | 2.89% |
| Damages Estimate | 4.05 hours | $1,631.25 | 6.32% |
| Written Discovery | 7.02 hours | $2,682.30 | 10.39% |
| Discovery via the Conferral Process | 0.10 hours | $43.50 | 0.17% |
| Depositions | 10.20 hours | $3,978.00 | 15.41% |

---

[6] These figures are expressed as a percentage of $25,810.95, the total fees Harrison seeks after removing the amounts she has withdrawn her requests for and recalculating each billing entry based upon the product of the hours expended and the relevant billing rate.

| Various Motions | 15.13 hours | $5,981.55 | 23.17% |
|---|---|---|---|
| Motion for Summary Judgment | 4.81 hours | $1,930.35 | 7.48% |
| Settlement | 10.17 hours | $4,081.50 | 15.81% |
| Trial Preparation | 0.50 hours | $195.00 | 0.76% |
| Mediation | 3.93 hours | $1,561.05 | 6.05% |
| Uncategorized Legal Research | 0.61 hours | $237.90 | 0.92% |
| Miscellaneous | 1.54 hours | $665.40 | 2.58% |
| Factual Development | 0.66 hours | $287.10 | 1.11% |
| Offer of Judgment | 0.58 hours | $234.30 | 0.91% |

(Dkt. #46 at p. 1; Dkt. #46, Exhibit 2 at pp. 10–12, 16–28; Dkt. #53 at pp. 6–8, 10). The fees that Harrison seeks to recover do not include any of the hours that Arbuckle billed (*See* Dkt. #46 at p. 1; Dkt. #46, Exhibit 1 at p. 97; Dkt. #46, Exhibit 2 at pp. 10–12, 16–28). "[I]n order to present a conservative calculation of fees," Bridgers states in his affidavit that he reduced the fees sought by $2,008.40 (Dkt. #46, Exhibit 2 at p. 12).

However, Tyler takes issue with multiple of the categories for which Harrison seeks attorney's fees, claiming that billing entries related to the categories should be reduced or eliminated from any fee award (Dkt. #47 at p. 6). These categories include: (1) Depositions; (2) Various Motions; (3) Miscellaneous and Factual Development; and (4) various "unproductive" billing entries and Uncategorized Legal Research (Dkt. #47 at pp. 6–10).[7] The Court addresses each category in turn.

### a.    Billing Entries for Depositions

Tyler argues the deposition billing entries are vague, block-billed, and include an inconsistent description of what work related to depositions was actually performed in this case

---

[7] Tyler also listed "Amended Complaint" a challenged category (Dkt. #47 at pp. 6–8). However, the Court will not address this category because Harrison has entirely withdrawn her request for fees for work involving this category (Dkt. #53 at p. 6).

(Dkt. #47 at p. 8). Tyler claims that the Court should reduce the amount of each billing entry relating to depositions by 10% because the entries are vague and block-billed (Dkt. #47 at p. 8).

In response, Harrison asserts that most of the billing entries for deposition are related to Harrison's deposition (Dkt. #53 at p. 11). She claims that these billing entries are not block-billed, but instead are "simple, clear, and directly related to one aspect of a day's work" (Dkt. #53 at p. 11). However, Harrison has withdrawn all entries by Bridgers relating to the depositions (reducing the fees for depositions by $365.40 or 8.42%). (Dkt. #53 at p. 11).

"'Block billing' refers to a 'time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expending on specific tasks.'" *Roor Int'l BV v. Stinky's Smoke Shop, LLC*, 4:18–CV–735, 2024 WL 1914985, at *6 (E.D. Tex. May 1, 2024) (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n.15 (10th Cir. 1996)). "Block billing is disfavored because it prevents the court from accurately determining the time spent on any particular task, thus impairing the court's evaluation of whether the hours were reasonably expended." *Id.* (quoting *Hoffman v. L & M Arts*, No. 10–CV–953, 2015 WL 3999171, at *4 n.5 (N.D. Tex. July 1, 2015)). "When making a reduction because of block billing, courts in the Fifth Circuit generally reduce a percentage of the hours or the lodestar figure, and this amount usually ranges from 10% to 30%." *Id.* (citing *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, No. 09-cv-1596, 2010 WL 3294248, at *3 (N.D. Tex. Aug. 20, 2010)).

Multiple billing entries relating to depositions are block-billed. These entries list multiple deposition-related tasks performed within a given day without indicating the amount of time spent on any particular task (*See* Dkt. #46, Exhibit 2 at p. 20). The Court will not further reduce the

12

billing entries relating to depositions because Harrison already reduced her requested fees for this category by approximately 10% (*See* Dkt. #53 at p. 11).

### b.    Billing Entries for Various Motions

Tyler specifically takes issue with the billing entries related to Harrison's present motion for attorney's fees (Dkt. #53 at pp. 8–9). Tyler argues that Harrison's counsel should not have spent 10.83 hours preparing for and drafting Harrison's less than 6-page motion for attorney's fees and an additional 3.5 hours in reserve to file an anticipated reply (Dkt. #47 at pp. 8–9). Rather, Tyler claims that Harrison's counsel's "excessive hours" to draft the present motion should be reduced by half to a total of 5.42 hours (Dkt. #47 at p. 9).

Harrison argues that her requested fees relating to the present motion should not be reduced because it "required substantial declarations from three attorneys and dozens of pages of exhibits" (Dkt. #53 at p. 8). She claims that "[e]very line of these sworn statements and billing records had to be scrutinized" (Dkt. #53 at p. 8). Additionally, Harrison notes that the reply brief has taken more than seven (7) hours to prepare, more than double Harrison's initial request (Harrison is not requesting additional fees for the additional time required to draft the reply brief) (Dkt. #53 at p. 8).

The Court finds that no reduction to this category is appropriate. In addition to drafting the motion and reply, Harrison's counsel analyzed their time billed, prepared three affidavits, and provided over one hundred (100) pages of supporting documentation. Although the present motion is relatively short, the time billed is appropriate and reasonable.

###### c.    Billing Entries for Miscellaneous and Factual Development

Tyler claims that Harrison's counsels' time entries under the categories of Miscellaneous and Factual Development all relate to time spent on abandoned legal theories and administrative tasks (Dkt. #53 at pp. 9–10).[8] Therefore, Tyler argues that the Court should not award any attorney's fees for entries in the categories of Miscellaneous and Factual Development (Dkt. #53 at pp. 9–10).

In response, Harrison argues that many of these billing entries are appropriate because they relate to key initial decisions that greatly aided this litigation (Dkt. . 53 at p. 8). She also claims that "reasoned consideration and conversation along with supervisory direction among counsel is appropriately billed (Dkt. #53 at p. 8). Harrison also withdrew $130.50 worth of requested fees (Dkt. #53 at p. 8).

Clerical work is not recoverable in an award of attorney's fees. *Vela v. City of Hous.*, 276. F.3d 659, 681 (5th Cir. 2001). Clerical work includes matters such "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations, and drafting correspondence." *Mis. v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989).

The Court finds that none of the remaining challenged billing entries are for clerical work. Tyler cites to *Lewallen v. City of Beaumont* for the proposition that basic communication and case organization is clerical work (Dkt. #47 at p. 10) (citing *Lewallen v. City of Beaumont*, No. 1:05–CV–733, 2009 WL 2175637,at *6–7 (E.D. Tex. July 20, 2009)). *Lewallen* notes that tasks such as indexing documents are clerical work. *Lewallen*, 2009 WL 2175637, at *6. However, other tasks

---

[8] The Court discusses the issue of "abandoned legal theories" in the next section. *See infra* Part I.B.2.d.

such as conferring with staff of counsel and reviewing or analyzing documents are substantive legal work. *Id.* at *6, 10. The remaining billing entries that Tyler challenges are closer to the latter category than the former category. Therefore, the remaining challenged entries, including entries such as "[d]iscuss division of labor and assignments with [Arbuckle] for witness calls" and "[c]onfirm assignments of tasks to paralegal in Harrison matter," are substantive legal tasks.

### d.   Billing Entries for Uncategorized Legal Research and "Unproductive" Billing Entries

Next, Tyler argues that Harrison should not recover attorney's fees for time that her counsel spent on "abandoned legal theories" and certain unproductive hours relating to additional discovery (Dkt. #47 at pp. 9–10). Regarding "abandoned legal theories," Tyler argues that the Court should not award fees for a billing entry for research on the "necessity of pleading affirmative defenses and standard for more definite statement motion" because Harrison never filed a motion for a more definite statement (Dkt. #47 at p. 9).

Tyler claims that the Court should not award fees for work that Harrison ultimately did not use to prosecute her case (Dkt. #47 at p. 10). Harrison requested and received additional time to respond to Tyler's motion for summary judgment (Dkt. #47 at p. 2). During this time, Harrison conducted additional discovery before responding to the motion (Dkt. #47 at p. 2). However, Harrison did not use any newfound information received during the extended discovery prior in her response to Tyler's motion for summary judgment (Dkt. #47 at p. 2).

Harrison responds that the question is not whether research or discovery is unnecessary because she did not file a corresponding motion, but rather whether the effort was reasonably undertaken (Dkt. #53 at p. 9–10) (citing *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 262 (5th Cir. 2018) (Ho, J., concurring)). On the issue of the motion for a more definite statement, Harrison

claims that her "counsel—in their professional judgment—undertook a small amount of legal research to examine whether more explicit pleadings could be demanded from [Tyler]" (Dkt. #53 at p. 9). She claims that although her counsel ultimately decided not to file such a motion does not automatically make such a minor investigation into the issue unreasonable (Dkt. #53 at p. 9).

Additionally, Harrison claims that the additional discovery, which she conducted before responding to Tyler's motion for summary judgment, was necessary to prepare for litigation (Dkt. #53 at p. 9). Specifically, she conducted discovery to obtain "voluminous emails that evidenced the day-to-day work of [Harrison] to protect against later mischaracterizations by [Tyler] of her job duties" at a later stage of litigation, such as trial. Harrison further argues that although these documents may not have been necessary to defend against a motion for summary judgment, the additional discovery was still necessary to prepare for litigation (Dkt. #53 at pp. 9–10). However, Harrison withdrew one request for a fee of $17 relating to work by a paralegal (Dkt. #53 at p. 10).

"It is thus well established that an attorney fee must be 'reasonable,' whether it is paid by a client or an opposing party." *Gurule*, 912 F.3d at 262 (Ho, J., concurring). "[N]ot every attorney task will ultimately pay off for the client, even amongst the most conscientious of counsel." *Id.* "A legal theory might seem genuinely promising at the outset, but ultimately bear no fruit." *Id.* "Attorney time may be reasonably spent, even if it does not actually result in client value." *Id.* "[T]he overarching question that courts should ask in such circumstances is whether the attorney expended the time in a good faith pursuit of value for the client—or was instead engaged in churning attorney fees." *Id.* at 263. "If the former, the time may be awarded, even though it ultimately proved fruitless." *Id.* "If the latter, the churned time should be denied." *Id.*

In both of the instances at issue, legal research on a motion for a more definite statement and the additional discovery before responding to a motion for summary judgment, Harrison has provided reasonable explanations for her counsels' work (Dkt. #53 at p. 9–10). Harrison's counsel started to conduct research on a motion for a more definite statement but ceased their efforts when they decided against filing such a motion (Dkt. #53 at p. 9). Further, the decision of Harrison's counsel to not use information at the summary judgment stage that they obtained in discovery does not  necessarily mean the discovery was unnecessary. The Court declines to reduce Harrison's award of attorney's fees due to abandoned legal theories or "unproductive" billing entries.

Based upon the reasonable rates of Harrison's counsel and the number of hours expended, the resulting lodestar figure is $25,810.95.

### C.      Adjustments to Attorney's Fees

After determining the lodestar figure, the district court may adjust the lodestar up or down in accordance with the relevant *Johnson* factors not already included in the lodestar. *Shipes*, 987 F.2d at 320. The Court must be careful when applying the *Johnson* factors to make sure "not to double count a *Johnson* factor already considered in calculating the lodestar when it determines the necessary adjustments." *Id.* "Four of the *Johnson* factors—the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation—are presumably fully reflected in the lodestar amount." *Id.* If a factor is presumably considered in the lodestar amount, the Court may still make an adjustment based on that factor only "in certain rare and exceptional cases supported by both specific evidence on the record and detailed findings." *Id.*

In analyzing the *Johnson* factors, the Court finds that the lodestar figure of $25,810.95 is reasonable, without the need for adjustment. Tyler claims that the Court should reduce the lodestar figure based on five (5) of the *Johnson* factors: (1) the degree of success obtained; (2) the novelty and difficulty of the issues; (3) the loss of other employment in taking the case; (4) whether the fee is fixed or contingent; and (5) the undesirability of the case (Dkt #47 at pp. 4–5, 10–12). The Court only addresses these five (5) *Johnson* factors and finds that the other seven (7) *Johnson* factors are neutral.

### 1.   Degree of Success Obtained

Tyler argues that the Court should reduce the lodestar figure by 50% because Harrison was "unsuccessful on the merits of her biggest claim and unable to recover on approximately 58% of the damages she sought" (Dkt. #47 at p. 5). Tyler claims that the Court's grant of partial summary judgment against Harrison significantly constrained her damages and limited her success (Dkt. #47 at pp. 4–6). Additionally, Tyler notes that the settlement agreement did not contain an admission of liability by Tyler (Dkt. #47 at p. 5).

In response, Harrison claims that Tyler's argument that she was only partially successful is speculative because the Court did not render final judgment and it is impossible to analyze how much Harrison would have recovered (Dkt. #53 at p. 2). Rather, Harrison claims that the best measure of her success is what she was willing to settle the case for before summary judgment ($20,000) and what she ultimately settled the case for after summary judgment ($23,000 plus fees and costs) (Dkt. #53 at pp. 2–3). Additionally, Harrison points out that "[n]o significant time was spent on [the issue eliminated by the Court's summary judgment ruling], and no significant time could have been omitted if only the [remaining issue] had been considered" (Dkt. #53 at p. 4).

18

The most crucial element in determining a reasonable attorney's fee is the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. at 424, 436 (1983). There is no requirement of proportionality in an award of attorney's fees. *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 396 (5th Cir. 2016). However, "proportionality is an appropriate consideration in the typical case." *Hernandez v. Hill Country Tel. Co-Op., Inc.*, 849 F.2d 139, 144 (5th Cir. 1988). "[I]t would be an abuse of discretion for [a] district court to reduce [an] attorney's fee award solely based on the amount of damages obtained." *Black v. SettlePou, P.C.*, 732 F.3d 492, 503 (5th Cir. 2013).

This case ended in a settlement agreement rather than proceeding to trial (Dkt. #40; Dkt. #41; Dkt. #43). Harrison received $23,000 plus fees and costs in the settlement agreement. (Dkt. #40 at p. 3; Dkt. #41 at p. 2). This amount is 41.85% of the $54,964 that Harrison estimated was the maximum judgment that she could have received (*See* Dkt. #40 at p. 3). Thus, the amount Harrison received is slightly less than 2.5 times the maximum amount Harrison could have received (*See* Dkt. #40 at p. 3). Further, the lodestar figure has a ratio of 1.12 to the $23,000 that Harrison received in the settlement agreement (not including costs and fees) (*See* Dkt. #40 at p. 3; Dkt. #41 at p. 2).

This case is not of the rare and exceptional kind to warrant deviating from the lodestar figure based upon the factor of the degree of success obtained in litigation, a factor presumably fully reflected in the lodestar amount. *See Shipes*, 987 F.2d at 320. Although the Court eliminated a large portion of Harrison's potential damages via its summary judgment finding, the Court did not dismiss her sole claim (Dkt. #36; Dkt. #1 ¶¶ 46–51; *see* Dkt. 40 at p. 3). Although Harrison's success was not total, her success was still significant enough to justify the current lodestar figure. Further, the ratio of the attorney's fee award to amount received (normally measured in damages

awarded) is far below the values that typically draw suspicion from courts. *See*, *e.g.*, *Migis*, 135 F.3d at 1048 (finding that a ratio of 6.5:1 of the attorney's fees awarded to the amount of damages awarded was "simply too large to allow the fee award to stand"); *Gurule*, 912 F.3d at 259 (noting that a ratio of approximately 33:1 of the attorney's fees awarded to the amount of damages awarded was "eyebrow-raising"). Based on the above reasoning, this factor supports the lodestar figure of $25,810.95.

### 2. Novelty and Difficulty of the Issues

Tyler argues that the issues in this case were neither novel nor difficult (Dkt. #47 at p. 11). According to Tyler, "[t]his was a straight-forward, single-plaintiff overtime case in which [Harrison] claimed she was misclassified under the FLSA" (Dkt. #47 at p. 11). Further, Tyler notes that "this was the third lawsuit that [Harrison's] counsel filed against [Tyler] within a span of approximately two-and-one-half years claiming FLSA misclassification" (Dkt. #47 at p. 11). Therefore, Tyler claims this factor should decrease the lodestar figure (Dkt. #47 at p. 11).

Harrison responds that "issues of novelty and complexity are fully reflected in the number of billable hours recorded by counsel" (Dkt. #53 at p. 5). Harrison also argues that Tyler's arguments about novelty are generic and provide no specific evidence.

The Court agrees with Harrison and finds that this factor does not support adjusting the lodestar figure. The factor of the novelty and difficulty of the issues is "presumably fully reflected in the lodestar amount." *Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). The Court may only deviate from this presumption "in certain rare and exceptional cases supported by both specific evidence on the record and detailed findings." *Shipes*, 987 F.2d at 320. No such specific evidence is present in the record.

### 3.  Loss of Other Employment in Taking the Case

Tyler argues that because this case was not complex, "[Harrison's] counsel was [not] precluded from accepting other cases due to their representation of [Harrison] in this case" (Dkt. #47 at p. 11). Therefore, if Harrison's counsel "chose to spend a considerable amount of time on this case to the exclusion of others, it was a choice, not necessitated by the nature of the case" (Dkt. #47 at pp. 11–12) (internal citations omitted). Harrison did not directly respond to this argument (Dkt. #53).

The Fifth Circuit has held that this factor, counsel's preclusion from other employment by taking the case, is ordinarily subsumed within the lodestar figure. *Shipes*, 987 F.2d 311, 321–22. No party has provided any "reason why that is not the case here." *See Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). Therefore, the Court finds that this factor does not justify altering the lodestar figure.

### 4.  Whether the Fee is Fixed or Contingent

The Fifth Circuit has held that any use of this factor, whether counsel's fee is fixed or contingent, is impermissible. *See*, *e.g.*, *Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 772 (5th Cir. 1996); *City of Burlington v. Dague*, 505 U.S. 557, 565–66 (1992). Therefore, the Court will not conduct any analysis of this factor and finds that it does not impact the lodestar figure.

### 5.  Desirability of the Case

Tyler argues that this case was desirable to Harrison's counsel because they have prior experience in FLSA litigation against Tyler (Dkt. #47 at p. 12). Thus, Tyler claims that this factor justifies reducing Harrison's requested attorney's fees (Dkt. #47 at pp. 11–12).

21

Harrison describes Tyler's argument as "silly" (Dkt. #53 at p. 6). Harrison claims that Tyler provides no specific facts and does not point a single instance of the lodestar figure "being adjusted downward because the case was not remarkably desirable" (Dkt. #53 at p. 6).

The Court cannot find any authority suggesting that counsel should receive a lower fee because counsel has experience in the subject matter of the case. Therefore, this factor does not impact the lodestar figure.

The *Johnson* factors do not justify modifying the lodestar figure. The Court finds that Harrison is entitled to an award of attorney's fees of $25,810.95.

## II.   Costs

Harrison also seeks $1,271.00 in costs, which are as follows:

| August 4, 2021 | *Pro Hac Vice* Fee for Bridgers | $100.00 |
|---|---|---|
| August 4, 2021 | *Pro Hac Vice* Fee for Herrington | $100.00 |
| February 4, 2022 | Copy of Harrison's Deposition Transcript | $574.00 |
| June 16, 2022 | Name Search | $1.00 |
| June 16, 2022 | Filing Fee | $402.00 |
| June 16, 2022 | Subpoena | $94.00 |

(Dkt. #46, Exhibit 2 at pp. 29–32). Rule 54(d) provides that costs, other than attorney's fees, should be granted to the prevailing party. FED. R. CIV. P. 54(d). Title 28, United States Code, Section 1920 sets forth which costs are taxable. Section 1920 allows recovery of the following costs:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

22

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title [28 USCS § 1923]; and

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title [28 USCS § 1828].

28 U.SC. § 1920.

The party seeking to recover costs has the burden of producing evidence properly documenting and establishing the costs incurred. *Fogleman v. ARAMCO*, 920 f.2D 278, 285–86 (5th Cir. 1991); *Faculty Rights Coal. V. Shahrokhi*, No. H-04-2127, 2005 WL 1924192, at *1 (S.D. Tex. Aug. 10, 2005). Tyler does not dispute Plaintiff's request for costs (Dkt. #47, Exhibit 1 at p. 1 n.1). Although no consensus exists among federal courts as to whether *pro hac vice* fees taxable costs, such fees are not properly recoverable in this Court. *Obey v. Frisco Med. Ctr. L.L.P.*, No. 4:13–CV–656, 2015 WL 1951581, at *2 (E.D. Tex. Apr. 29, 2015). Therefore, Harrison may not recover her requested $200.00 in *pro hac vice* fees.

Additionally, Harrison requests $1 for a "[n]ame search" (Dkt. #47, Exhibit 2 at p. 31). However, Harrison does not explain what this name search was or how it was conducted. The plain language in Section 1920 does not provide that a federal court may tax as costs a name search and Harrsion provides no authority establishing a right to recover such a fee. *See* 28 U.S.C. § 1920. Therefore, Harrsion may not recover the name search as a taxable cost.

Accordingly, the Court awards Harrison $1,070,00 for taxable costs.

**CONCLUSION**

It is therefore **ORDERED** that Plaintiff's Motion for Award of Attorney's Fees and Costs Pursuant to the Fair Labor Standards Act (Dkt. #46) is hereby **GRANTED in part**. Talia N. Harrison is awarded attorney's fees in the amount of $25,810.95 and $1,070.00 for taxable costs.

**IT IS SO ORDERED**.

 **SIGNED this the 22nd day of May, 2024.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE